UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT BARTON, et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:17-CV-618-RDP |
| } | |
| NATIONWIDE MUTUAL FIRE } | |
| INSURANCE COMPANY, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

The matter before the court is on Defendant Nationwide Mutual Fire Insurance Co.'s Motion for Summary Judgment (Doc. # 41). The Motion has been fully briefed (*see* Docs. # 43, 44, 45, 46) and is ripe for review. For the reasons set forth below, Defendant's Motion is due to be denied.

**I.    Factual Background**[1]

In 2006, Plaintiffs Robert and Mindy Barton contracted with Stacy Alliston Design and Building, Inc. ("SADB") to build a home, located at 3949 Butler Springs Way in Hoover, Alabama. (Doc. # 1 at ¶ 10; Doc. # 41 at 47-48). SADB acted as the general contractor, and hired subcontractors to perform the work involved in building the home. (Doc. # 43-1 at 7).

Plaintiffs closed on the property on October 27, 2006. (Doc. # 41 at 39). At closing, Plaintiffs identified deficiencies with the home and listed them on a punch list which was provided

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

to SADB. (Doc. # 41 at 76-80, 88).

After Plaintiffs moved into the house, during 2006 and 2007, they noticed additional concerns, which were "mostly water issues," particularly with a window in the foyer and dormer windows in the attic. (Doc. # 41 at 54). It was possible to "see outside" under the dormer windows, and in a few places in the roofing. (Doc. # 41 at 54). Mr. Barton was concerned about water damage because he could see "water come down [from the rafters] that was damaging the drywall." (Doc. # 41 at 55). This water caused staining in numerous rooms. (Doc. # 41 at 95). Mrs. Barton was told that there was water in the outlets in the attic, and she was concerned that presented a fire hazard. (Doc. # 41 at 95).

Plaintiffs contacted SADB about the water issues with the foyer window and the dormer windows. (Doc. # 41 at 90). SADB only made repairs to the dormer windows, suggesting that the water leakage from the foyer window was actually due to the dormer windows. (Doc. # 41 at 90). After SADB repaired the dormer windows, Plaintiffs did not see any more signs of water from the foyer window, but there remained water in the attic. (Doc. # 41 at 90).

### A. The Crown Report

On August 20, 2010, David Bennett of Crown Construction Consulting inspected Plaintiffs' home. (Doc. # 41 at 107-26). Bennett "identified 34 deficient areas of construction" in his report, including, among other things, the following:

1. Water damage substrate and roof decking on all front elevation dormers with evidence of fungal growth;

2. Unsealed toe board nail holes (noting that "[t]he water damage extend[ed] down past the roof line to the upstairs bedroom front interior wall"); and

3. Water staining on the front foyer wall, Palladium window appear[ed] to be leaking.

(Doc. # 41 at 107-26).

Ultimately, Plaintiffs had to replace the roof which was rotting due to unfixed toe board nail holes, and had to cut into sheetrock to evaluate water damage from the issues with the dormer windows. (Doc. # 41 at 56). According to Plaintiffs, the water intrusion issues had been identified prior to October 2007, within the one-year warranty period. (Doc. # 41 at 56). Plaintiffs filed a homeowner's claim with Allstate regarding the water issues within one year of taking possession of the home. (Doc. # 41 at 64). While Allstate ultimately denied coverage, it paid Plaintiffs $780.32 to "paint over the affected area [of wall damage from the water] that would continue to be a problem." (Doc. # 41 at 64).

### B. E-Services Inspection

Because Plaintiffs continued to discover defects and deficient work in the construction of their home, on July 16, 2012, Plaintiffs hired Richard LaFramboise with E-Services, Inc. to perform a full home inspection. (Doc. # 43-4). LaFramboise's report includes the following observations, among other things:

1. Damage at siding and substrate at front dormers. Stains at windows and framing; No evidence of proper house wrap or flashing at windows;

2. Stains at windows below dormers;

3. Rear arch has severe crack at brick course above window and no evidence of proper flashing at brick veneer; and

4. No evidence of proper flashing at windows at siding, improper siding installation and water damage at wall cavity.

(Doc. # 43-4). LaFramboise's report notes: "My inspection of [Plaintiffs'] home revealed numerous construction defects and failures to adhere to code requirements by the home's builder, as well as resulting damages, which were typical of the types of damages that commonly result from a builder's failure to adhere to building code mandates." (Doc. # 43-4 at 12).

Because SADB failed to correct the structural deficiencies, Plaintiffs claim to have incurred

3

significant expense to remedy the problems. (Doc. # 41 at 56).

### C. State-Court Litigation

On January 19, 2011, Plaintiffs filed suit against SADB in the Circuit Court of Jefferson County, Alabama, alleging: (1) negligent/wantonness: construction; (2) negligent/ wantonness: repair; (3) negligent/wantonness: hiring/supervision/training; (4) negligence/ wantonness; (5) fraudulent misrepresentation and/or innocent misrepresentation; (6) suppression; (7) breach of warranties; (8) third-party beneficiary; (9) nuisance; (10) breach of contract; (11) deceptive trade practices; and (12) deceit. (Doc. # 41 at 23-40). Nationwide retained the law firm of Gaines, Wolter & Kinney, P.C. to defend SADB. (Doc. # 43-2). However, on December 16, 2012, Nationwide ceased defending SADB, thus prompting Gaines, Wolter & Kinney, P.C. to move to withdraw as its counsel. (Doc. # 43-2). The motion to withdraw was granted. (Doc. # 43-3). After its counsel's withdrawal, SADB was unrepresented, and it failed to defend or participate in the case. (Doc. # 43-3).

On July 18, 2014, Plaintiffs moved for summary judgment. (Doc. # 41 at 128-39). SADB did not respond to the Motion. (Doc. # 41 at 141). On November 10, 2014, the Circuit Court of Jefferson County granted Plaintiffs' Motion For Summary Judgment and entered judgment against SADB in the amount of $900,000.00. (Doc. # 41 at 141).

### D. Relevant Policy Provisions

SADB was insured by Nationwide under policy number 77-01-PR-735-296-3001. (Docs. # 43-6, 43-7, 43-8 and 43-9). The policy became effective on December 18, 2005 and was in effect until it was cancelled on March 15, 2009. (Docs. # 23 at 1, 43-6, 43-7, 43-8, and 43-9).

The 2006 and 2007 policies are essentially identical. (Docs. # 43-6, 43-7). The 2008 and 2009 policies are also essentially identical to each other and included new endorsements that

changed relevant provisions from the 2006 and 2007 policies. (Docs. # 43-8, 43-9).

The Policies contain the following relevant policy provisions:

**COMMERICAL GENERAL LIABILITY COVERAGE PART**

**Section I - Coverages**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    A. Paragraph 1.b. under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY in SECTION I – COVERAGES** is replaced by the following:

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" first "manifests" during the policy period.

    C. The following definition is added to **SECTION V – DEFINITIONS**:

    "Manifests" means that the damage or injury is either:

    a. Discovered by the insured or some other person; or

    b. Reasonably should be discovered by the insured or some other person.

    D. The following exclusion is added to paragraph 2., **Exclusions** of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages)**:

    This insurance does not apply to "Bodily injury" and "property damage" which "manifests" prior to the inception of this policy or after termination of this policy.

2. **Exclusions**

This insurance does not apply to:

**a.** **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**k.** "Property damage" to "your product" arising out of it or any part of it.

Endorsement: Exclusion – Damage to Work Performed by Subcontractors On Your Behalf

Exclusion l of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following exclusion is added to Paragraph **2.**, Exclusions of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability**.

**2.** **Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

a. "Bodily injury' or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, absorption of, exposure to, existence of, or

> > presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, maternal or product contributed concurrently or in any sequence to such injury or damage.
>
> > b. Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or "bacterial", by any insured or by anyone other person or entity.
>
> C. The following definition is added to the **Definitions** Section:
>
> > "Fungi" means any type or form of fungus, including mold or mildew, and any spores, mycotoxins scents or produced or released by fungi.

[Fungi or Bacterial Exclusion Endorsement]

> **Definitions.**
>
> > 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> >
> > 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> >
> > 16. "Products-completed operations hazard":
> >
> > a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> > . . .
> >
> > (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

7

(a) When all of the work called for in your contract has been completed. []

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Your product":

   a. Means

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;
         (b) Others trading under your name; or
         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

22. "Your work":

a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

(Docs. # 43-6, 43-7).

There were provisions in the 2008 and 2009 policies that differed from the 2006 and 2007 policies. (Docs. # 43-6, 43-7, 43-8 and 43-9).

Paragraph 1.b.(2) under COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY was slightly amended for the 2008/2009 Policy periods by Endorsement number CAS6349-0504, which changed the word "occurs" to "first manifests." (Docs. # 43-6, 43-7, 43-8 and 43-9). Endorsement CAS6349-0504 also added the following definition for "manifests" to the policies for 2008/2009: "'Manifests' means that the damage or injury is either: a. Discovered by the insured or some other person; or b. Reasonably should be discovered by the insured or some other person." . (Docs. # 43-8 and 43-9). That endorsement also added the following exclusion to the policies for 2008/2009: "This insurance does not apply to: 'Bodily injury' and 'property damage' which 'manifests' prior to the inception of this policy or after termination of this policy." (*Id.*).

The exclusion for "Damage To Your Work" was amended for the 2008 and 2009 Policy periods by Endorsement CG 22 94-1001, which removed the exception for damage to your work

9

caused by subcontractors (the "subcontractor exception") that was provided in the 2006 and 2007 policies: "[The Damage To Your Work] exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (Docs. # 43-6, 43-7, 43-8 and 43-9).

The policy in effect for each policy year included $2,000,000 in "products-completed operations" coverage. (Doc. # 43-6 at 6, 43-7 at 8, 43-8 at 8, 43-9 at 6).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is

clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III. Analysis**

Plaintiff's Complaint asserts one claim against Defendant under Alabama Code § 27-23-2. Plaintiffs seek to satisfy the $900,000.00 judgment they obtained in the Circuit Court of Jefferson County, Alabama, against Defendant's insured, SADB. (Doc. # 1). Plaintiffs, "as the part[ies] seeking coverage under the Policy, bear[] the burden of proving that coverage exists." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par.*, 790 F.3d 1173, 1180 (11th Cir. 2015) (citing *Ala. Hosp. Ass'n Trust v. Mut. Assurance Soc'y of Ala.*, 538 So.2d 1209, 1216 (Ala. 1989)). Defendant, "[a]s the insurer, [] bears the burden of proving that [any] exclusion applies." *Id.* (citing *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, 12 (Ala. 2001)).

Defendant argues that it is entitled to summary judgment for five reasons: (1) defective work is not an "occurrence," and is therefore not covered under the applicable policies; (2) there was no accident, and therefore no "occurrence" triggering coverage; (3) there is no applicable subcontractor exception because the exception was removed by an endorsement; (4) Plaintiffs cannot show an "occurrence" manifested during the policy period; (5) damages related to mold were excluded[2]; and (6) there is no coverage for intentional conduct. (Doc. # 41).

Plaintiffs respond that Defendant is not entitled to summary judgment because: (1) damage to other property constitutes an "occurrence" under the policy; (2) leaks and moisture constitute "accidents"; (3) the 2006 and 2007 policies contained the subcontractor exception which negated the "your work" exclusion for those policy years; (4) Stacy Allston paid for $2,000,000 "Products Completed Operations" coverage for each policy year; (5) the "property damage" manifested

---

[2] Plaintiffs concede that damages related to mold are due to be excluded. (Doc. # 44 at 24).

12

during the initial policy period; and (6) the intentional conduct exclusion does not apply. (Doc. # 44).

A.  **Damage to Plaintiffs' Property Resulting From Faulty Work Is An "Occurrence"**

Defendant argues that defective work, or faulty work, is not considered an "occurrence" under Alabama law, thus barring Plaintiff's claim. (Doc. # 41 at 11-13). Plaintiffs contend that SADB performed faulty work that caused additional damage to their newly-built home in the form of water damage so severe as to require Plaintiff, among other things, to add a new roof. (Doc. # 41 at 54-56).

"When a contractor performs faulty work (that is, fails to use reasonable skill), there is no accident or occurrence, but, when the contractor's faulty work creates a condition that in turn damages property, under Alabama law, that damage results from an accident." *Pennsylvania National*, 790 F.3d at 1178 (citing *Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, 157 So.3d 148, 155–56 (Ala. 2014)). The Alabama Supreme Court has explained that when considering "whether poor workmanship can lead to an occurrence," it generally "depends [in each case] 'on the nature of the damage' that results from the faulty workmanship." *Jim Carr*, 157 So. 3d at 153 (quoting *Town & Country Prop., L.L.C. v. Amerisure Ins. Co*., 111 So.3d 699, 705 (Ala. 2011)). If faulty workmanship "subjects personal property or other parts of the structure to 'continuous or repeated exposure' to some other 'general harmful condition' [] and, as a result of that exposure, personal property or other parts of the structure are damaged" that may be an "occurrence" under a CGL policy. *Jim Carr*, 157 So.3d at 154 (quoting *Town & Country Property, L.L.C.*, 111 So.2d at 705-06). Therefore, although faulty workmanship itself is generally not an "occurrence" under Alabama law, faulty workmanship can cause an occurrence. *Jim Carr.* 157 So.3d at 155-56 ("[T]he fact that the cost of repairing or replacing faulty workmanship itself is not the intended object of

13

the insurance policy does not necessarily mean that, in an appropriate case, additional damage to a contractor's work resulting from faulty workmanship might not properly be considered 'property damage' 'caused by' or 'arising out of' an 'occurrence.'").

The policies all define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. # 43-6 at 25). Here, the "accident" which is the "occurrence" is the repeated exposure to water and moisture caused by the improperly constructed dormers and windows. (Doc. # 41 at 55-56).

Although some of the damage which makes up the $900,000 judgment against SADB may be excluded under the legal principles set forth above, it is undisputed that at least *some* of the resulting property damage caused by the faulty work could be considered an occurrence under the policy. (Doc. # 41 at 27; Doc. # 45 at 3). Therefore, Defendant is not entitled to summary judgment based on the "your work" exclusion or the absence of an "occurrence."

### B. The Subcontractor Exception in the 2006 and 2007 Policies Negates the "Your Work" Exclusion

Defendant makes the argument that there was no subcontractor exception in the policies because, it contends, it was removed by endorsement. (Doc. # 41 at 14). But, Plaintiffs have presented evidence that the 2006 and 2007 policies contained the subcontractor exception, and it was not until the 2008 and 2009 policies went into effect that the exception was removed. (Doc. 44 at 20 (citing Docs. 43-6, 43-7, 43-8 and 43-9). Defendant's reply brief does not respond to this argument and evidence, or even further mention the subcontractor exception. (Doc. # 45).

The Supreme Court of Alabama has explained the interaction between the "your work" exclusion and subcontractor exception as follows:

> In practical effect, the your-work exclusion and the subcontractor exception operate to exclude coverage for property damage caused by work performed by the insured contractor on his own behalf but *to restore coverage for property damage caused by work performed by a subcontractor on behalf of the insured contractor*.

*Town & Country Property, L.L.C. v. Amerisure Ins. Co.*, 111 So. 3d 699, 705 (Ala. 2011) (emphasis added); *see also J.B.D. Const., Inc. v. Mid-Continent Cas. Co.,* 571 F. App'x 918, 925 (11th Cir. 2014). Here, SADB acted as the general contractor and hired subcontractors to perform the work in building Plaintiffs' home. (Doc. # 43-1 at 7). Thus, to the extent there was faulty work which caused an "occurrence" during the term of the 2006 and 2007 policies, the "subcontractor exception" restores coverage for damage caused by work performed by subcontractors. Plaintiffs have presented evidence that some of the damage at issue here manifested itself during the first year they were in the home – that is, between October 2006 and October 2007. (Docs. # 41 at 54-56, 76-80, 88). Therefore, the subcontractor exception may provide coverage for damages which would otherwise be excluded by the "your work" exclusion. Factual issues regarding damages must be determined by a jury. Therefore, Defendant is not entitled to summary judgment – even related to damage which would otherwise be excluded as damage to "your work" during the effective period for the 2006 and 2007 policies.

## C. Plaintiffs Have Presented Evidence that Damage First Manifested During the 2006 and 2007 Policy Periods

Defendant argues that it is entitled to summary judgment because Plaintiffs cannot establish that any resulting damages manifested or occurred during the applicable policy period. (Doc. # 41 at 15-17). Plaintiffs respond that there is Rule 56 evidence that "the damages at issue either 'occurred' or 'first manifested' during the 2006 and 2007 policy periods" because Plaintiffs testified that "the water infiltration issues occurred and/or manifested during the first year they were in the home." (Doc. # 44 at 20 (citing Doc. # 41 at 54-55, 90-91)). The 2008 Policy (which, again, removed the subcontractor exception) went into effect on December 18, 2007. (Doc. # 43-8 at 4). Moreover, the 2006 and 2007 policies expressly provide that "'property damage' which occurs during the policy period [] includes any *continuance, change or resumption* of that []

'property damage' *after the end* of the policy period." (Doc. # 43-6 at 13, 43-7 at 16). Thus, the 2006 and 2007 policies may cover come damages that continued subsequent to those policy coverage periods.

"Alabama law is clear that, in determining the timing of an 'occurrence' for insurance coverage purposes, the relevant inquiry is when the property damage took place, not when the underlying work was performed." *Cincinnati Ins. Co. v. Amerisure Ins. Co*., 2012 WL 4033724, at *9 (S.D. Ala. Sept. 12, 2012) (citing *U.S. Fidelity & Guar. Co. v. Warwick Development Co*., 446 So.2d 1021, 1024 (Ala. 1984)). Here, Plaintiffs testified that they were first damaged during the 2006 and 2007 policy periods. Therefore, based on this Rule 56 record, Defendant is not entitled to summary judgment on the basis that there was no "occurrence" during the applicable policy period. Any disagreement about that question is for a jury, not the court.

D. **SADB's Policies Included Products-Completed Operations Coverage**

Each of Stacy Allison's policies included $2,000,000 in "products-completed operations" coverage. (Doc. # 43-6 at 6, 43-7 at 8, 43-8 at 8, 43-9 at 6). The Supreme Court of Alabama has held that a "your work" exclusion identical to the one in Nationwide's Policy did not apply if the policy's declarations indicated that the insured had purchased Products-Completed Operations coverage. *Jim Carr*, 157 So. 3d at 156-57. In fact, that court agreed with the following summary:

> Simply put, the 'your work' exclusion applies if and only if the Policy's declarations fail to show any coverage for 'products-completed operations.' That is not the case here. Clearly, [SADB] bargained and paid for up to a total of $[2],000,000 in coverage for [its] 'products-completed operations,' which nullifies and renders inapplicable the 'your work' exclusion here.

*Id.* at 157. Thus, for this additional reason, Defendant is not entitled to summary judgment based on the "your work" exclusion.

E. **Mold Exclusion**

The parties agree that damages relating to mold are excluded from coverage. (Doc. # 44 at

24). However, it is up to a jury to determine what portion of the award against SADB was related to damage from mold.

### F. Intentional Conduct

Defendant argues that it is entitled to summary judgment because Plaintiffs' state court Complaint against SADB, and its summary judgment arguments in state court, asserted that Plaintiffs were damaged by SADB's intentional conduct. (Doc. # 41 at 18-20). However, Plaintiffs' Complaint against SADB clearly alleged negligence claims. (Doc. # 41 at 28 – 31). Therefore, Defendant is not entitled to summary judgment basis on this basis. It is up to a jury to determine what portion of the award against SADB was related to Plaintiffs' negligence claims.

## IV. Conclusion

For all of the foregoing reasons, Defendant Nationwide Mutual Fire Insurance Co.'s Motion for Summary Judgment (Doc. # 41) is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this February 14, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE