FILED

2021 Mar-04  PM 01:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT BARTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **2:17-CV-618-SLB** |
| | ) | |
| **NATIONWIDE MUTUAL FIRE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiffs Robert and Mindy Barton ("the Bartons") bring a direct action claim against Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") for satisfaction of a judgment, pursuant to Alabama Code § 27-23-2.  (Doc. 1).[1]  This court held a bench trial on December 7, 2020.  This Memorandum Opinion constitutes the court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.  After considering the evidence put forth by the parties, the court will enter judgment in favor of the Defendant because the Plaintiffs have failed to show what, if any, damages Nationwide is required to indemnify.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

## I.    PROCEDURAL HISTORY

On April 17, 2017, Robert Barton and his wife Mindy filed a complaint in this court against Nationwide and Stacy Alliston Design and Building Inc. ("SADB"), raising one claim for relief based on diversity jurisdiction.  (Doc. 1). The Bartons brought a direct action claim against Nationwide and SADB under Alabama Code § 27-23-2 seeking satisfaction from Nationwide—SADB's insurer—of a $900,000 state court judgment against SADB for damages based on SADB's defective construction of the Bartons' home.  The Bartons' complaint seeks the $900,000 state court judgment along with costs, interest, attorneys' fees, and any exemplary damages permitted by law.  (*Id.*).  Nationwide filed an answer to the Bartons' complaint.  (Doc. 7).  Before the case progressed further, the court entered an order realigning SADB as a party-plaintiff rather than as a defendant. (Doc. 21).  SADB has not entered an appearance in the case or made any filings.

Nationwide filed a motion for summary judgment, arguing that it was not liable for indemnification of the judgment against SADB because none of the damages at issue were covered by SADB's insurance policy with Nationwide. (Doc. 41).  After the motion was fully briefed, Judge R. David Proctor[2] entered an opinion finding that, reading all facts in favor of the nonmoving party, Nationwide had not shown that the alleged damages—with the exception of any damages

---

[2] The case was subsequently reassigned to the undersigned.  (Doc. 55).

relating to mold—were outside of the coverage of SADB's Nationwide policy as a matter of law.  (Doc. 47).  Accordingly, Judge Proctor denied summary judgment. (Doc. 48).

At the undersigned's direction, Nationwide filed a motion for reconsideration of Judge Proctor's denial of summary judgment.  (Doc. 58).  The court denied the motion for reconsideration, finding that genuine issues of material fact remained for trial.  (Doc. 59).

The case was tried before the undersigned without a jury on December 7, 2020.  Following the bench trial, the court requested proposed findings of fact and conclusions of law, which the parties submitted and the court reviewed.  (Doc. 74; doc. 75).

## II.    FINDINGS OF FACT

### a.  Construction of the Bartons' home

The Bartons contracted with SADB to build a custom home; on October 27, 2006, the Bartons purchased the house—located at 3949 Butler Springs Way in Hoover, Alabama—for $697,125.00.  (Doc. 70 at 2).  SADB acted as general contractor in the construction of the house, but subcontractors performed the work on the home.  (Doc. 73at 56). [3]  It is undisputed that at least some of the subcontractors engaged in faulty workmanship and defective construction,

---

[3] Document 73 contains the transcript of the bench trial in this case.

including failing to close toe-board holes in the roof and failing to properly install dormers and windows.  (*Id.* at 48–49, 67, 82, 92).

When the Bartons closed on the house in October of 2006, they made a punch list of remaining problems with the house that they provided to SADB. (Doc. 73 at 44).  Within the first year of living in the house from 2006 to 2007, the Bartons noticed problems with the house—notably water intrusion from the roof, dormer windows, and a large window in the foyer.  (*Id.* at 35, 39–44, 57–58).  At times, the Bartons could clearly see water coming into the house, including once during a thunderstorm in 2006 or 2007 when Mr. Barton saw water coming into the attic.  (*Id.* at 35).  They could also see water coming into upstairs bedrooms and the foyer.  (*Id.* at 39–41).  Because the water was coming in at the attic and going all the way to lower floor areas, Mr. Barton knew that there was water in the walls. (*Id.* at 41).

As a result of the water coming in, the Bartons noticed staining of drywall, some molding pulling away, and cracking in eaves.  (Doc. 73 at 41, 43).  They also noticed holes and rotted places in the roof from the water.  (*Id.* at 48).  SADB told the Bartons that they thought the water intrusion was caused by a problem with the flashing above the window and at the dormers.  (*Id.* at 57).  SADB came to the house ostensibly to make repairs soon after the Bartons moved in; ultimately, however, SADB did not fix the water intrusion issues.  (*Id.* at 44).

In 2007, the Bartons had exploratory cuts made into the drywall that found water damage behind the drywall and in the framing of the house. (*Id.* at 104–106). The Bartons did not get an estimate for repairs to the water-intrusion damage at that time because repair was outside of their financial means. (*Id.* at 44, 106).

The Bartons filed an insurance claim with Allstate, the carrier of their homeowner's insurance, based on the problems with the house. (Doc. 73 at 112). The Bartons sought coverage for water damage, but Allstate largely denied coverage for the claim after finding that the claim was based on defective construction. (*Id.* at 76–77; 112–113); (Doc. 70 at 3). Allstate ultimately paid the Bartons $780.32 to paint over staining from the water damage. (Doc. 73 at 76–77); (Doc. 70 at 3).

The Bartons had their drywall inspected because a neighbor had found Chinese drywall in their home that needed replacement. (Doc. 73 at 60–61). A drywall inspector did not find defective drywall, but the inspector did note some other problems with the house. (*Id.* at 61). In light of the inspector's comments, the Bartons had Dave Bennett of Crown Construction Consulting inspect their home in August 2010. (*Id.* at 60–61). Mr. Bennett conducted a thorough inspection and identified multiple deficient areas of construction, including in the

roof and around the windows.  (*Id.* at 61, 67–70, 92).[4]  He also found that there was water in some electrical outlets, which created a fire hazard.  (*Id.* at 70–71).  The discovery of water in the outlets distressed Ms. Barton because she worried about the fire hazard and her children's safety.  (*Id.* at 174).

Before Mr. Bennett's report for Crown Consulting, there were problems with the house that the Bartons were not aware of, including problems with the siding of the house; the Bartons just knew that there was water coming into the house.  (*Id.* at 73–74).  Mr. Barton acknowledged that the Crown Report identified previously unknown areas of defective construction, like problems with columns and brickwork, that were merely aesthetic and did not result in damages or structural problems.  (*Id.* at 74–76, 94, 110).

Because of the problems with their home, the Bartons received $20,000 from the Alabama Home Builders Recovery Fund.  (Doc. 73 at 77).  The Bartons used as least part of that money to pay Scott Holcombe to make repairs to the house, including the dormers.  (*Id.*).  In 2011, the Bartons had to have areas of the house reroofed for $22,000 to fix the open toe-board holes and repair water damage.  (*Id.* at 52–54).  The reroofing stopped some leaks in the house, but not all of them.  (*Id.* at 53–54).

---

[4] "A lot" of the things in the Crown Report were "along the lines" of items that SADB was supposed to fix per the punch list.  (Doc. 73 at 70).

In 2015, the Bartons had Donnie Jones, a residential homebuilder for New Generation Building and Design, come out to look at the damage to the home and provide an estimate for repair.  (Doc. 73 at 114–118,160).  In 2015, Mr. Jones estimated that it would cost roughly $215,000 to repair the damage to the house. (*Id.* at 161–162).  He found that SADB had not properly installed window flashing and house wrap at the windows, which allowed water to come in and caused the plywood sheathing and studwork of the house to rot, damaging the structural integrity of the house.  (*Id.* at 120–145).  Upon questioning about whether there was a problem with the brick of the house, Mr. Jones testified that the problems he saw were caused by the flashing rather than the brick.  (*Id.* at 153).  Because of the water intrusion, Mr. Jones found mold and rot on the house's framework.  (*Id.* at 154, 157).  Mr. Jones acknowledged, in response to questioning, that rot is something that happens to wood as a process.  (*Id.* at 157).  Mr. Jones admitted that he did not have the mold and rot on the framework tested, but offered testimony that the damage was a combination of rot and mold and was "more rot than it is mold."  (*Id.* at 157, 164).

Mr. Jones testified that the water damage to the house would require demolition and renovation to repair because he would have to take the house apart to repair the sheathing, house wrap, and flashing.  (Doc. 73 at 120–145).  He estimated that the cost of correcting only SADB's actual defective failure to install

flashing would be $4,620.  (*Id.* at 118).  Mr. Jones provided an updated estimate of the cost to repair the damage to the house in 2020, estimating that the cost to repair the damage to the house had risen to roughly $288,000 because of price issues; he also affirmed that he believed he could repair the house for less than the $450,000 put forth by Mr. Barton in state court as the cost of the property damage.  (*Id.* at 119–120, 159, 162–163).  Mr. Jones stated that the Bartons would have to be out of the house during repairs.  (*Id.* at 148–149).  Ms. Barton subsequently stated that the cost of relocating the family would be around $30,000 because there were not many rental homes available on the market, but she had found a rental house available for roughly $5,000 a month.  (*Id.* at 172–173).

Ms. Barton testified that the problems with the house caused her emotional distress and mental anguish.  (Doc. 73 at 173–174).  She said that the issues caused financial stress and anxiety because she worried that the home was a bad investment and because they could not afford to replace everything when issues arose.  (*Id.* at 173–174).  She also experienced emotional distress due to concerns about mold and water damage because Mr. Barton and their daughter are diabetic and due to concerns over water in the outlets causing a fire hazard.  (*Id.* at 174).  She went through breast cancer and chemotherapy in 2012 and the problems with the house added to her stress.  (*Id.*).  However, she testified that, by 2012, she thought that the water intrusion issues were repaired.  (*Id.* at 176–180).

### b.  State Court Proceedings

On January 19, 2011, the Bartons filed a lawsuit against SADB in the Circuit Court of Jefferson County, Alabama, alleging: (1) negligence/wantonness: construction; (2) negligence/wantonness: repair; (3) negligence/wantonness: hiring/supervision/training; (4) negligence/wantonness; (5) fraudulent misrepresentation and/or innocent misrepresentation; (6) suppression; (7) breach of warranties; (8) third-party beneficiary; (9) nuisance; (10) breach of contract; (11) deceptive trade practices; and (12) deceit.  (Doc. 41 at 28–37).  In the complaint, the Bartons alleged that SADB had caused "numerous construction defects and violations of the applicable building code and residential construction industry standards which have resulted in damage to Plaintiffs' home."  (*Id.* at 27).  They went on to state that:

> Those defects, deficiencies and damages include, but are not limited to, the following: roof framing is improper, roofing installed incorrectly, moisture barrier was not installed properly, doors were not aligned properly, Palladian window at entrance way has leaked and caused damage to the surrounding drywall, windows do not seal properly, improper installion [sic] of brick veneer as weep holes were not evident in the brick veneer and through wall flashing was not installed, brick rowlocks do not have minimum slope, dissimilar materials not sealed properly, front retaining wall does not have proper drainage.

(*Id.* at 27–28).  The Bartons alleged that "[a]s a proximate result of Defendants' actions," they had suffered damages consisting of the loss of the difference in market value of the home if it had been constructed correctly and the present

market value of the home in its damaged condition, consequential damages for the cost of repairing the structure of the home, and physical injury, mental anguish, and emotional distress.  (*Id.* at 28).  Nationwide originally acted to defend the suit but withdrew its defense in December 2012.  (Doc. 43-2): (Doc. 43-3).  SADB did not retain its own counsel to defend the suit.

The Bartons then filed a motion for summary judgment against SADB on their claims for negligent and wanton construction, negligent and wanton repair, and negligent and wanton hiring, supervision, and training.  (Doc. 41 at 128–30).  The Bartons argued in their motion for summary judgment that SADB was not only negligent, but wanton—which they stated requires a conscious act or omission "while knowing that such act or omission of such duty will result in injury."  (*Id.* at 131, 135).  The Bartons asserted that SADB "knew it was not following applicable building codes, and therefore knew that damages were likely to result."  (*Id.* at 135).

The Bartons stated in their motion for summary judgment that SADB's actions proximately caused "numerous construction defects and failures to adhere to code requirements [. . . ] as well as resulting damages, which were typical of the types of damages that commonly result from a builder's failure to adhere to building code mandates."  (*Id.* at 136).  The Bartons listed the following damages in their motion for summary judgment:

1. Damage at siding and substrate at front dormers. Stains at windows and framing. No evidence of proper house wrap or flashing at windows.
2. Improper flashing at sidewall.
3. Daylight at flashing area at gable, scab added.
4. Improper condensate drain line.
5. Stains at windows below dormers.
6. Improper door installations, bad hinge cutout.
7. Doors askew.
8. Rear Entrance door is delaminated. Doors do not fit properly and rub at jamb when closed.
9. Rear arch has severe crack at brick course above window and no evidence of proper flashing at brick veneer.
10. Exterior veneers not sealed at terminations.
11. Poor workmanship at wood trim and post.
12. No evidence of proper flashing at windows at siding, improper siding installation and water damage at wall cavity.
13. No evidence of proper flashing at brick veneer.
14. Windows do not close and seal properly.
15. Cracks at drive.
16. Large gap at roof termination at corner.
17. Downspouts should direct water down shingles not across.
18. No relief drain at brick retaining wall.
19. Downspouts not directing water away from structure.
20. Improper roof assembly.

(*Id.*).

In support of their motion for summary judgment, the Bartons submitted an affidavit from Mr. Barton in which he stated that the Bartons had suffered $450,000 in property damage and $450,000 in emotional distress damages because of SADB's actions.  (Doc. 43-5).  In the affidavit, Mr. Barton stated that the property damages were "due to the acts of Defendant Stacy Alliston Design and Building Inc."; he also stated that "the acts of the Defendant have caused"

emotional distress and anxiety forming the basis of emotional distress damages. (*Id.* at 1).  He stated that all $900,000 of damages were "due to the acts" of SADB, but he did not delineate or explain the specific breakdown of the damages.  (*Id.* at 2).  Mr. Barton based the property damage amount in the affidavit on an informal estimate that he obtained from discussions with two friends in the home construction industry.  (Doc. 73 at 83–84, 91).[5]

SADB did not oppose the Bartons' motion for summary judgment, so, on November 10, 2014, the state court granted summary judgment to the Bartons. (Doc. 41 at 141).  The state court awarded the Bartons $900,000 in damages, consisting of $450,000 in property damage and $450,000 in emotional distress damages, "based on evidence submitted by Plaintiffs regarding damages sustained to their home and emotional distress."  (*Id.*).  The state court did not give any further information regarding the award of damages.  (*Id.*).

---

[5] THE COURT: So the affidavit in the state court action was based solely on the oral discussion he had with two friends of his; is that right?

MR. EDGE: Yes, ma'am.

THE COURT: Well, two friends—is that right? Two friends of yours that are—are they contractors or—

THE WITNESS [Plaintiff Robert Barton]: Yes, Ma'am. Yes, Ma'am.

THE COURT: Okay.  So the $450,000 was based on what they just told you, but you have no written documents from either one of those two people?

THE WITNESS: Yes, ma'am, that is correct.

(Doc. 73 at 91).

### c. Insurance Policy

Nationwide was SADB's insurance carrier from 2005 to 2009 pursuant to commercial general liability ("CGL") policy number 77-01-PR-735-296-3001. (Docs. # 43-6, 43-7, 43-8 and 43-9).  SADB actually had four different insurance contracts for CGL coverage with Nationwide during the relevant time period. (Docs. # 43-6, 43-7, 43-8 and 43-9).  The first policy went into effect on December 18, 2005.  (Doc. 43-6 at 5).  Each year on December 18 a new, similar policy went into effect until coverage lapsed in March of 2009.[6]

The policies are all extremely similar.  (Docs. # 43-6, 43-7, 43-8 and 43-9). The 2006 and 2007 policies were virtually identical, as were the 2008 and 2009 policies, but the policies had a few significant changes between 2007 and 2008. (Docs. # 43-6, 43-7, 43-8 and 43-9).  Of relevance here, the policies stated:

> [Nationwide] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Doc. 43-6 at 13).[7]  The policies covered only bodily injury or property damage caused by an "occurrence" during the policy period.  (*Id.*).  The policies define

---

[6] The court will refer to each policy by the year of its termination.

[7] Where the language between all of the policies is substantially similar, the court will cite to the 2006 policy.

**"occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions."** (*Id.* at 25) (emphasis added).  The parties agree in this case that any occurrence took place when the Bartons first noticed it.  (Doc. 70 at 4).  The policies state that they only cover occurrences discovered during the policy period, but they do cover a continuation, change, or resumption of property damage that initially occurred during the policy period.  (Doc. 43-6 at 13).

The policies contain multiple exclusions that limit coverage.  They contain an exclusion for property damage "expected or intended" by the insured.  (*Id.* at 14).  The policies also contain an endorsement stating that they do not cover damage from fungi or bacteria.  (*Id.* at 11).  Additionally, the policies include a "your work" exclusion that states that insurance coverage does not apply to "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"  (*Id.* at 16).  The policies define "your work" as being "work or operations performed by you or on your behalf," including "warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of 'your work.'"  (*Id.* at 26).  However, under the 2006 and 2007 policies, the "your work" exclusion does not apply if the "damaged work or the work out of which the damage arises was performed on your behalf" by a subcontractor.  (*Id.* at 16).

14

The policies define "products-completed operations hazard" to include any property damage "away from premises you own or rent and arising out of 'your product' or 'your work'" that has been completed, excepting certain narrow situations.  (*Id.* at 25).  Of relevance in this case, the declarations on all of the policies reveal that Stacy Alliston had supplemental products-completed operations coverage totaling $2,000,000.  (*Id.* at 6; 43-7 at 8; 43-8 at 8; 43-9 at 6).

The 2008/2009 policies were substantially similar to the 2006/2007 policies, but had some significant differences.  (Docs. # 43-6, 43-7, 43-8 and 43-9).  Of relevance in this case, the 2008/2009 policies include an endorsement removing the subcontractor exception to the "your work" coverage exclusion.  (doc. 43-8 at 35).

## III.   CONCLUSIONS OF LAW

The only claim in this case arises under Alabama Code § 27-23-2, entitled "Rights of Judgment Creditors."  The statute states:

> Upon the recovery of a final judgment against any person, firm, or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury, or death or for loss or damage to property, if the defendant in such action was insured against the loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money provided for in the contract of insurance between the insurer and the defendant applied to the satisfaction of the judgment, and if the judgment is not satisfied within 30 days after the date when it is entered, the judgment creditor may proceed against the defendant and the insurer to reach and apply the insurance money to the satisfaction of the judgment.

Ala. Code § 27-23-2.  The statute is known as the "direct action" statute because it allows a plaintiff to "'reach and apply' insurance proceeds to satisfy their judgment" against an insured "by bringing a direct action claim against their insurer."  *Porter v. Am. Guarantee & Liab. Ins. Co.*, No. 2:12-CV-103-MEF, 2013 WL 5347439, at *2 (M.D. Ala. Sept. 23, 2013).  Thus, "the direct action statute provides a cause of action for the tort claimant to collect any judgment against the insured from the insurer *if there is a duty to indemnify*."  *Monroe Guar. Ins. Co. v. Pinnacle Mfg., LLC*, No. 2:17-CV-01630-JHE, 2018 WL 792059, at *2 (N.D. Ala. Feb. 8, 2018) (emphasis in original).

An injured person cannot bring suit against an insurer under the direct action statute until they have obtained a judgment against the insured.  *U.S. Fid. v. St. Paul Fire & Marine Ins. Co.*, No. 95-0406-CB-S, 1998 WL 34374427, at *5 (11th Cir. Feb. 25, 1998) (citing *Ohio Cas. Ins. Co. v. Gantt*, 54 So. 2d 595, 597 (1951)).  Here, the Bartons have properly obtained a judgment against SADB and can, therefore, proceed against Nationwide as SADB's insurer under the direct action statute if they can show that Nationwide has a duty to indemnify the judgment against SADB.  *See Monroe Guar. Ins. Co., LLC*, No. 2:17-CV-01630-JHE, 2018 WL 792059, at *2.

"The law is clear that a judgment creditor's right under § 27–23–2 to proceed against the insurance company to satisfy a judgment obtained against the

defendant/insured is dependent upon the rights of the insured against its insurer under the policy." *St. Paul Fire & Marine Ins. Co. v. Nowlin*, 542 So. 2d 1190, 1194 (Ala. 1988).  Accordingly, recovery under Section 27-23-2 is circumscribed by the coverage limitations of the insured's insurance policy.  Under Alabama law, a plaintiff, "as the party seeking coverage under the Policy, bears the burden of proving that coverage exists." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par.*, 790 F.3d 1173, 1180 (11th Cir. 2015).  On the other hand, an insurer bears the burden of proving that an exclusion to coverage applies.  *Id.* at 1181.  Therefore, the Bartons bear the burden of proving coverage in this case, but the burden shifts to Nationwide if it seeks to show that an exclusion to coverage applies.  *See id.* at 1180–81.

### A. Estoppel

As an initial matter, the Bartons argue that Nationwide should be estopped from contesting coverage under the policy—and thus recovery under the direct action statute of all of the damages granted by the state court—because Nationwide withdrew from defending SADB in the underlying state court lawsuit.  (Doc. 75 at 16–23).  This argument is misplaced.

It is true that, under Alabama law, an insurer's failure to properly defend an insured under certain circumstances can estop an insurer from denying indemnification under an operative insurance policy.  *See, e.g., Shelby Steel*

*Fabricators, Inc. v. U.S. Fid. & Guar. Ins. Co.,* 569 So. 2d 309, 312 (Ala. 1990) (holding that an insurer was required to provide indemnification to an insured where the insurer had breached the applicable enhanced obligation of good faith). However, the Alabama Supreme Court has clearly stated that "[a]lthough the doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture, the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom." *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 50–51 (Ala. 1980).  So, "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Id.* at 51; *see also Mobile Airport Auth. v. HealthSTRATEGIES, Inc.*, 886 So. 2d 773, 782 (Ala. 2004) (citing, though distinguishing, *Home Indem. Co.*, 381 So. 2d at 50–51).

In short, Alabama law does not allow estoppel to create coverage—and, thus, indemnification—under an insurance policy.  The Bartons therefore cannot rely on estoppel to require Nationwide to indemnify their damages against SADB where the damages are not covered by the applicable insurance policy.

### B. Coverage of damages under the Nationwide policy

Defenses available to an insurer in an action by the insured are also available to the insurer in actions brought by an injured party pursuant to Section 27-23-2.

18

*Nationwide Mut. Fire Ins. Co. v. Estate of Files*, 10 So. 3d 533, 534–35 (Ala. 2008). So, in the same way that Nationwide would not be required to indemnify SADB if SADB could not show coverage under the policy, Nationwide has no liability in this case if the Bartons cannot show that SADB's policy covers the Bartons' damages. Thus, as discussed above, to recover from Nationwide the Bartons must prove that SADB's Nationwide insurance policy covers the damages awarded by the state court. *See St. Catherine of Siena Par.*, 790 F.3d at 1180.

The evidence in this case shows that the Bartons obtained a judgment against SADB for negligence and wantonness causing multiple injuries, including property damage and emotional distress caused by multiple types of defective construction and the results stemming from the defective construction. Under Alabama law, "[w]hen an insured causes multiple injuries, coverage is determined on an injury-by-injury basis, and the insurer is obligated only to indemnify for damages arising out of the covered injuries." *St. Catherine of Siena Par.*, 790 F.3d at 1178.

This inquiry becomes more difficult when the state court judgment does not clearly delineate the damages for various injuries. Applying Alabama law, the Eleventh Circuit has held that, where "the jury used a general verdict form and did not identify each injury for which it was awarding damages, it is appropriate, under Alabama law, to look to the record of the trial in the underlying action to identify

19

the injuries for which the injured party sought damages." *Id.* at 1180. In this case, there was not a general verdict from a jury, but there was a similarly general judgment from the state court. The judgment granted by the state court—which was based on the affidavit provided by Mr. Barton that set forth damages based on informal verbal estimates from friends in the construction industry—granted a total of $450,000 in damages for property damage and $450,000 in damages for emotional distress with no indication of the specific injuries or damages underlying the judgment. (Doc. 41 at 141). This general and nonspecific grant of damages requires the court to look beyond the judgment alone to parse the damages awarded by the state court, just as it would where a jury entered a general verdict. *See St. Catherine of Siena Par.*, 790 F.3d at 1178.

Just as there is no underlying jury verdict in this case, there is also no trial record that the court can review to determine the injuries for which the Bartons recovered damages. However, the absence of a trial record does not leave the court without recourse. The Bartons' complaint and, more importantly, their motion for summary judgment in state court allow the court to identify the separate injuries and damages for which the Bartons sought recovery and address whether the Bartons have met their burden of proving that they were awarded damages for injuries covered under the Nationwide policy. *See St. Catherine of Siena Par.*, 790 F.3d at 1178, 1180.

In their complaint in state court, the Bartons alleged multiple counts of both negligence and wantonness against SADB related to the building of their home, as well as other claims.  (Doc. 41 at 27–37).  In their motion for summary judgment, the Bartons reduced their claims to only negligent and wanton construction, repair, and hiring, supervision, and training.  (Doc. 41 at 128–30).  The Bartons sought damages for both construction defects and damage resulting from such defects; their alleged damages included improper flashing and house wrap, problems with the roof, damage to the wall interior, improper door installation, a crack in the rear arch of the house, poor workmanship with the woodwork, cracks in the driveway, and problems with a retaining wall.  (*Id.* at 136).  Based on the injuries for which the Bartons sought recovery and the evidence produced at the bench trial before this court, the Bartons have failed to meet their burden of showing what, if any, of the damages that they recovered on summary judgment in state court are covered by the applicable Nationwide policy in this case.

The applicable Nationwide policy in this case provided SADB with typical CGL coverage.  As is standard for a CGL policy, the insurance policies in this case only provide coverage for bodily injury or property damage caused by an "occurrence," as defined under the policy, that the Bartons discovered during the policy period.  *Owners Ins. Co. v. Jim Carr Homebuilder, LLC*, 157 So. 3d 148, 153 (Ala. 2014); (Doc. 43-6 at 13); (Doc. 70 at 4).  The policies define

"occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same generally harmful conditions." (*Id.* at 25). The policies contain exclusions precluding coverage for damage from fungi or bacteria, expected or intended damage, and property damage to "your work." (Doc. 43-6 at 11, 14, 16). The "your work" exclusion states that the policy will not cover damage to your work and included in the products-completed operations hazard— which effectively covers completed work that is no longer in the insured's possession. (*Id.* at 16, 25). However, the 2006 and 2007 policies had an exception to the "your-work" exclusion that provided coverage if the "damaged work or the work out of which the damage arises was performed" by a subcontractor. (*Id.* at 16).

In examining effectively identical CGL policy language, the Alabama Supreme Court has found in the context of claims for faulty construction that "faulty workmanship itself is not an occurrence" covered under CGL policies, but can "lead to an occurrence if it subjects personal property or other parts of the structure to 'continuous or repeated exposure' to some other 'general harmful condition' […] and, as a result of that exposure, personal property or other parts of the structure are damaged." *Town & Country Prop., L.L.C. v. Amerisure Ins. Co.*, 111 So. 3d 699, 706 (Ala. 2011). Thus, an insurance company is not required to indemnify an insured for a judgment against it "insofar as the damages represented

the costs of repairing or replacing the faulty work," but the insurer may be required to indemnify damages that are the *result* of faulty workmanship. *Id.* So, where a contractor builds a leaky roof but the leaks cause no damage, there is no occurrence creating coverage under a CGL; but where a contractor builds a leaky roof and the leak results in damages to the surrounding "ceilings, walls, or floors of the building, the resulting damage" is an occurrence that is covered under a CGL. *See Nationwide Mut. Fire Ins. Co. v. David Grp., Inc*., 294 So. 3d 732, 736 (Ala. 2019), *reh'g denied* (Aug. 23, 2019); *accord St. Catherine of Siena Par.*, 790 F.3d at 1178.

### i.    *Negligence Claims*

The Bartons argue that the damages they obtained from SADB in state court are covered under the Nationwide policy because the damages were caused by water intrusion resulting from defective construction, which constitutes a covered occurrence under the Nationwide CGL policy. After considering the evidence, the court finds that the Bartons have shown that they have experienced some damage to their home that could be covered by the Nationwide policy as resulting from faulty construction. Unfortunately, the Bartons have not met their burden of proving that Nationwide is required to indemnify any of the state court's judgment because the Bartons failed to show the amount of "damages arising out of the covered injuries." *St. Catherine of Siena Par.*, 790 F.3d at 1178.

Between testimony from Mr. Barton and Mr. Jones, the Bartons provided compelling evidence that, by the time of trial, they had experienced water damage to their home that could qualify as a covered occurrence under the Nationwide policy. *See* (Doc. 43-6 at 13); (doc. 70 at 4).  Mr. Barton provided credible testimony that he first witnessed water coming into the house through the defective roof and windows in 2006 or 2007, during the policy period.  (Doc. 73 at 35, 39–44, 57–58).  Further, Mr. Jones provided credible testimony that water coming in through the defective roof and windows had, at least by 2015, caused ancillary damage to the house that was not, itself, defective construction.  (*Id.* at 120–145). Accordingly, under Alabama law, the Bartons showed that, at least by 2015, they had experienced an "occurrence" covered by the Nationwide policy.  *See Town & Country Prop., L.L.C.*, 111 So. 3d at 706.

Further, exclusions to the policy would not preclude coverage, at least not entirely.  Mr. Jones testified that at least some of the damage that he observed to the frame of the house was caused by rot, not mold; therefore, Nationwide failed to show that coverage would be entirely precluded by the mold exclusion.  (Doc. 73 at 154, 157, 164); (Doc. 43-6 at 11).  Coverage also would not be precluded by the "your work" exclusion because the water intrusion was caused by the work of

subcontractors and occurred by 2007,[8] when the subcontractor exception to the "your work" exclusion still applied. *See* (Doc. 73 at 56); (Doc. 43-6 at 16, 25). Accordingly, the Bartons produced evidence that, at the time of the bench trial, they had experienced injury potentially covered by Nationwide policy.

However, the Bartons have failed to prove what portion, if any, of the state court's grant of damages was attributable to injuries covered by the Nationwide policy. *See St. Catherine of Siena Par.*, 790 F.3d at 1178.  As an initial matter, the Bartons failed to provide the court with evidence of anything that could have informed the specifics of the state court's grant of damages for injuries covered under the insurance policy. The Bartons admitted that they did not receive a written estimate for repairing the water damage to their home when they had exploratory cuts made into the drywall.  (Doc. 73 at 106).  They also did not put forth any other written repair estimates for the water intrusion damage that they obtained before the state court judgment.  Instead, the Bartons put forth evidence from Donnie Jones about the damage caused by water intrusion and the cost of repair.  Mr. Jones's testimony, however, does not offer insight into the portion of

---

[8] The water intrusion is considered to have occurred when it was discovered by the Bartons in 2007.  (Doc. 70 at 4).  The fact that the water intrusion continued to cause damage over time does not change the time of the occurrence under the policy because an accident can encompass "continuous or repeated exposure to substantially the same generally harmful conditions" and the policy covers "a continuation, change, or resumption of property damage that initially occurred during the policy period."  (Doc. 43-6 at 13, 25).

the state court judgment related to covered occurrences.

Mr. Jones did not provide any information for the state court proceedings underlying the Bartons' claim.  In fact, the state court awarded damages in the underlying case in 2014, but Mr. Jones did not visit the Bartons' house until 2015 and did not know the condition of the home prior to 2015.  (Doc. 73 at 161).  Many of the photos of the home that Mr. Jones relied upon at trial actually came from the fall of 2020, more than five years after the state court judgment.  (*Id.* at 132–133). Mr. Jones said that the structure of the home was "starting to weaken," but stated that the damage that he observed would have taken time to develop and would not have occurred soon after the completion of the house.  (*Id.* at 128–130).  He also provided a repair estimate of roughly $215,000 in 2015—after the state court judgment—and an updated and increased estimate of roughly $288,000 in 2020 because the costs had changed.  (*Id.* at 117–120, 159, 162).  Mr. Jones's own testimony highlights the fact that the damage to the Bartons' home caused by water intrusion was an evolving—and worsening—situation with evolving—and increasing—associated costs.  Because of this evolving nature and because Mr. Jones's inspections and estimates postdated the state court judgment, the court finds his evidence too divorced from the state court proceedings to provide a basis for a determination that the amount of damages awarded by the state court was caused by injuries covered under the Nationwide policy in this case.

Thus, the only evidence available to the court on the issue of the apportionment of damages by the state court is Mr. Barton's affidavit alleging generally that the Bartons experienced $450,000 in property damage and $450,000 in emotional distress damages.  (Doc. 43-5).  The affidavit, and the underlying informal oral estimates, simply do not provide the court with any details about what injuries caused what damages or how those damages were calculated.  The court also must note that Mr. Jones's estimate to repair the damage to the house— even adjusted for the passage of time and the increased cost of materials—was far less than the $450,000 property damage amount awarded by the state court, which calls the reliability of the $450,000 figure into doubt.  In sum, the affidavit provides no indication of what portion of the state court damages was covered under the policy.

Further, it is important to recognize that both the Bartons' summary judgment motion in state court and evidence presented at the bench trial show that some of the injuries underlying the $900,000 damages awarded by the state court were not covered by the Nationwide policy.  First, the Bartons included in their motion for summary judgment damages caused by defective workmanship like improper door installation, a crack in the rear arch of the house, poor workmanship with the woodwork, cracks in the driveway, and problems with a retaining wall.  (Doc. 41 at 136).  At no point in the underlying state court case or before this court

27

have the Bartons alleged that those instances of faulty workmanship caused other damages; the claims are purely for the defective construction itself.  Accordingly, parts of the damage award from the state court were for defective construction, which is not an occurrence covered by the Nationwide policy.  *See Town & Country Prop., L.L.C*, 111 So. 3d at 706.

A similar problem exists with the Bartons' emotional distress damages; the Bartons cannot show that all of their emotional distress damages would be covered by the Nationwide policy.  As with their estimate for property damages, the Bartons provided this court with no basis for the $450,000 emotional distress damages awarded by the state court.  Also, like the property damage, some of the damages for which they provided evidence would not be covered under the Nationwide policy.  For example, Ms. Barton testified that some of her emotional distress arose from concerns about mold because her daughter and husband are diabetic.  (Doc. 73 at 174).  The Nationwide policies have an endorsement establishing a mold exclusion for damages caused by bacteria or fungi.  (Doc. 43-6 at 11).  Therefore, emotional distress damages caused by fear of mold are not covered under the policy.  Further, Ms. Barton testified that the problems with the house caused her emotional distress when she was going through chemotherapy in 2012, but admitted that, at that time, she thought that the water intrusion problems—the only injury for which there could be coverage under the policy—

had resolved.  (Doc. 73 at 174, 176–180).  So, she did not show that her emotional

distress during chemotherapy was caused by a covered occurrence under the

policy.  Accordingly, the Bartons failed to show that all of the emotional distress

damages awarded by the state court were covered under the policy and did not

provide the court with any means of determining what amount of damages were

covered under the policy.

ii.   *Wantonness claims*

The Bartons' failure to show coverage of their damages extends not only to

their specific injuries, but even to their claims for relief.  The Bartons were granted

summary judgment not only on claims of negligence but also claims of

wantonness.  *See* (Doc. 41 at 128, 141) The Bartons cannot meet their burden of

showing coverage under the Nationwide policy for any damages awarded based on

their allegations of SADB's wantonness.

As discussed above, the applicable Nationwide policy only covers bodily

injury or property damage caused by an "occurrence," which is defined as an

"accident."  (Doc. 43-6 at 13, 25).  (*Id.*).  Therefore, "[t]he absence of an accident

necessarily precludes the existence of an occurrence" under a CGL policy like the

one at issue in this case. *United States Fid. & Guar. Co. v. Bonitz Insulation Co. of

Alabama*, 424 So. 2d 569, 572 (Ala. 1982).  Although the policy in this case does

not define "accident," the Alabama Supreme Court has held that, in the CGL

29

context, "an 'accident' is '[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could [not] be reasonably anticipated.'" *David Grp., Inc*., 294 So. 3d at 735 (quoting *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005)). An accident must be "something unforeseen, unexpected, or unusual." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1011. Thus, "[w]hen the insured makes an error in judgment but 'at all times acted in a deliberate and purposeful manner,' its conduct does not constitute an accident or occurrence." *St. Catherine of Siena Par.*, 790 F.3d at 1178 (quoting *Hartford Cas. Ins. Co.*, 928 So. 2d at 1013). "The common factors of *intent* and *foreseeability* thus guide the court's analysis" of whether something qualifies as an accident and, therefore, an occurrence covered by an insurance policy. *Employers Mut. Cas. Co. v. Smith Const. & Dev., LLC*, 949 F. Supp. 2d 1159, 1171 (N.D. Ala. 2013).

The Bartons' wantonness claims do not qualify as accidents or covered occurrences under the Nationwide policy. In their motion for summary judgment, the Bartons sought judgment on multiple claims for wanton construction practices. (Doc. 41 at 128, 130–131). The Bartons specifically stated in their summary judgment brief that they pursued claims of wantonness where "[w]antonness is defined as the conscious doing of some act or the omission of some duty while knowing that such act or omission of such duty will result in injury." (*Id.* at 131).

The Bartons also asserted that SADB "knowingly" failed to follow proper building codes and insure proper work by their subcontractors; they asserted that SADB was "fully aware" that it did not follow applicable building codes and "knew or should have known" that the failure to comply with building codes would likely result in injury to the Bartons. (*Id.* at 131, 134). The Bartons stated that SADB's "knowing failure to construct Plaintiffs' home to applicable code standards constitutes wantonness under Alabama law" because SADB "knew it was not following applicable building codes, and therefore knew that damages were likely to result." (*Id.* at 135). The Bartons asserted that SADB's negligence and wantonness caused "deficient work" and damages. (*Id.* at 136).

As the Bartons' motion for summary judgment indicates, their wantonness claims hinge on their allegations that SADB knew that they were not following applicable building codes and knew that injury would likely result. Thus, unlike claims for negligence that can support insurance coverage for accidental occurrences, the Bartons' claims of wantonness alleged conscious acts with an expectation of causing injury. *See Bonitz Insulation Co. of Alabama*, 424 So. 2d at 571 (stating that claims for negligence do not preclude findings of an occurrence because negligence claims do not require an expectation or intent to cause damage); *see also Moss v. Champion Ins. Co.*, 442 So. 2d 26, 29 (Ala. 1983) (indicating that the possibility of results of negligence constituting an occurrence

rests on the fact that negligence claims do not involve "conscious acts made with intent to cause damage").

The "factors of *intent* and *foreseeability*" prevent the Bartons' wantonness claim from constituting a covered occurrence under the Nationwide policy because the wantonness claims state that SADB acted in a "deliberate and purposeful manner." *See Employers Mut. Cas. Co.*, 949 F. Supp. 2d at 1171; *St. Catherine of Siena Par.*, 790 F.3d at 1178.  In other words, the wantonness claims against SADB are based on behavior that was not unintended or unforeseen, but, rather, something reasonably anticipated.  *See David Grp., Inc.*, 294 So. 3d at 735. Therefore, any damages caused by the Bartons' wantonness claims against SADB are not covered by the Nationwide policy because they were not an accident, and, thus, were not an occurrence under the language of the policy.  (Doc. 43-6 at 13, 25).[9]

So, in addition to failing to show the specific amount of the state court damages attributable to injuries covered under the Nationwide policy, the Bartons also failed to show the amount of damages attributable to claims covered by the policy.  The judgment from the state court simply grants general summary

---

[9] The court notes that coverage for the Bartons' wantonness claims could also be precluded by the policy's exclusion for property damage "expected or intended" by the insured.  (Doc. 43-6 at 14).  However, the court need not examine the operation of the exclusion in detail because the wantonness claims do not constitute covered occurrences under the policy.

judgment and grants $450,000 in damages for property damage and $450,000 for

emotional distress damages; it does not break down the damage award into

damages caused by negligence and damages caused by wantonness.  (Doc. 41 at

141).  Because of the general nature of the judgment, the court once again cannot

determine what portion of the damages granted by the state court are covered under

the Nationwide policy.

Though it is not binding precedent, an unpublished case from the Eleventh

Circuit provides helpful guidance in this situation.  Applying Alabama law in a

case under Section 27-23-2 seeking satisfaction of a judgment from a CGL insurer,

a panel of the Eleventh Circuit stated that "Alabama courts have held that when

(1) the injured party in the underlying action pursues two theories of liability,

(2) under one of the theories there is no coverage under the policy, and (3) the jury

returned a general verdict, then it is 'impossible' to establish coverage under the

policy." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Snider*, 607 F. App'x 879, 883

(11th Cir. 2015) (citing *Ala. Hosp. Ass'n Trust v. Mut. Assurance Soc'y of Ala.*, 538

So. 2d 1209, 1216 (Ala. 1989)).  The Eleventh Circuit held in that case that the

Plaintiffs could not meet their burden of showing coverage under the operative

insurance policy because the plaintiffs obtained a general verdict where the

damages were at least partially for a claim of liability based on conduct that was

not an accident—and, therefore, not covered by the policy—and the plaintiffs

offer[ed] no compelling explanation of how they can establish coverage given that they pursued two different theories of liability at trial in the underlying action, the Policy does not cover damages arising out of [the insured] abandoning the job, and the jury returned a general verdict that did not identify the amount of damages being awarded under each theory.

*Snider*, 607 F. App'x at 883–84.  While this unpublished case is not binding, it is persuasive because of its application of Alabama law.

As discussed above, there is no general verdict from a jury in this case, but there is a general judgment from the state court.  In another Section 27-23-2 case, a court in the Middle District of Alabama applied the holding in *Snider* where there was a general arbitration award and only an unspecified amount of the damages were covered by the insurance policy at issue.  *Rosenberg v. TIG Ins. Co.*, No. 2:16-CV-958-WHA, 2017 WL 4563859, at *1, *6–*7 (M.D. Ala. Oct. 12, 2017). That court found that the plaintiffs "pursued two different types of damages and received a general verdict, so it is 'impossible' for them to now establish coverage under the policy." *Id.* at *7.  A similar rationale applies in the case at hand.

The Bartons obtained a general judgment from the state court on two types of claims for relief, negligence and wantonness, but the damages for the wantonness claims are not covered by the Nationwide insurance policy at issue. This court's examination of the record reveals that there is no indication of "the amount of damages being awarded under each theory," such that it is impossible for the court to now determine the extent of coverage under the Nationwide policy

for the damages granted by the state court.  *See Snider*, 607 F. App'x 879, 883–84;

*St. Catherine of Siena Par.*, 790 F.3d at 1180.

## IV.   CONCLUSION

As explained in this Memorandum Opinion, the Bartons' ability to recover

under Section 27-23-2 is limited by the rights of the insured—SADB—against the

insurer, so the Bartons can only receive damages that SADB would be entitled to

under the applicable Nationwide CGL policy.  Thus, Nationwide is only obligated

to indemnify for damages arising out of covered injuries under SADB's insurance

policy and the Bartons bear the burden of proving coverage.  *St. Catherine of Siena

Par.*, 790 F.3d at 1178, 1180.  Here, the Bartons have not met their burden.  The

state court entered a general summary judgment against SADB for $450,000 in

property damages and $450,000 in emotional distress damages.  The judgment

included damages for injuries and claims not covered by the Nationwide policy.

The Bartons failed to provide the court with sufficient information to determine

how much of the damages awarded by the state court were attributable to injuries

or claims covered by the Nationwide policy in this case.  Accordingly, Nationwide

is entitled to judgment in this case.  Judgment will be entered by separate order.

**DONE** and **ORDERED** this 4th day of March, 2021.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE